IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GLORIA JEAN BELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:04-CV-627-WKW |
| | ) | (WO) |
| CAPITAL VENEER WORKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on defendant's Motion for Summary Judgment (Doc. # 15) filed on March 28, 2005; the plaintiff's Motion to Strike (Doc. # 20), filed on April 20, 2005; the plaintiff's Request for Permission to Respond (Doc. # 24), filed on May 6, 2005; the defendant's Motion to Substitute Memorandum (Doc. # 23), filed on May 2, 2005; and the defendant's Motion for Leave of Absence (Doc. # 29), filed on January 11, 2006.  For reasons to be discussed, the Court finds that the motion for summary judgment is due to be granted.  The other matters before the Court will be addressed at the conclusion of this memorandum opinion and order.

**I.  FACTS AND PROCEDURAL HISTORY**

The facts contained in the parties' evidentiary submissions, viewed in a light most favorable to the non-movant, show the following:

Capital Veneer Works, Inc.  ("Capital Veneer") is a family-owned business in Montgomery, Alabama that manufactures veneer and plywood products.  The company operates three separate plants on the same grounds; employees in all three plants do production work.  Plant number three is a "rework plant," where employees recycle leftover pieces of veneer from plants one and two to

create new products.  Fewer workers are needed to run plant number three than plants number one and number two; in addition, the production work in plant number three is dependent upon how much work is being performed in plants number one and number two.  Capital Veneer's workers are sometimes trained to work on multiple pieces of equipment, so that if work is slow in one plant, workers can simply work in another plant.

The plaintiff, Gloria Bell ("Bell"), worked as a laborer at Capital Veneer from October 3, 1997 until July 28, 2003.  She worked primarily in plant number three.  There were four short periods during this time when Bell did not work at Capital Veneer.  Three times, she was laid off when plant number three shut down due to a lack of work; each time, she was recalled when the plant reopened.  In addition, Bell voluntarily left her job at Capital Veneer in November 2001 to work at K-Mart.  She was laid off from K-Mart, and returned to work at Capital Veneer in January, 2002.

On Saturday, July 26, 2003, the supervisor of plant number three, Melinda Hendricks, was arrested for murder.  The following Monday, July 28, 2003, Capital Veneer's management made the decision to shut down plant number three due to a low volume of work and lack of leadership resulting from Hendricks's incarceration.  Bell was laid off on this date.  When plant number three reopened, Bell was not invited to return to work.  Bell did not ask to be rehired.

Bell filed this lawsuit against Capital Veneer on June 25, 2004, alleging one count of discriminatory discharge based on sex, race, and national origin pursuant to 42 U.S.C. § 2000e *et seq*. ("Title VII") and 42 U.S.C. § 1981 ("§ 1981"), and one count of age discrimination pursuant to 29 U.S.C. § 623 *et seq*. ("ADEA").  Capital Veneer filed this Motion for Summary Judgment on March 28, 2005.  Bell filed a response to the motion on April 20, 2005, and a reply was filed by the

defendant on May 2, 2005.[1]

## II.   JURISDICTION AND VENUE

Because this case arises under Title VII, 42 U.S.C. § 1981 and the ADEA, the Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.  The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations supporting both.

## III.   SUMMARY JUDGMENT STANDARD

Under Rule 56 (c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories,

---

[1] In her Response in Opposition to the Motion for Summary Judgment (Doc. # 20), Bell included a Motion to Strike portions of the affidavit of Jason Adams. Bell also filed a Request for Permission to Respond (Doc. # 24) to the affidavits of Jason Adams and Leroy Shannon that were filed simultaneously with defendant's Reply Brief (Doc. # 22). The Court finds that both motions are due to be DENIED, for reasons set forth herein.

and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that

there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the court must believe the evidence of

the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's

favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  After the nonmoving party has

responded to the motion for summary judgment, the court must grant summary judgment if there is

no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56 (c).

## IV.  DISCUSSION

*A.    Motion for Summary Judgment: Title VII and § 1981 Claims*

_____Bell brings claims under both Title VII and 42 U.S.C.A. § 1981.  These claims "have the

same requirements of proof and use the same analytical framework"; therefore, the Court will

"explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981

claim as well." *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998).  Title VII

provides that it is illegal for an employer "to fail or refuse to hire or to discharge any individual, or

otherwise discriminate against any individual with respect to his compensation, terms, conditions,

or privileges of employment, because of such individual's race, color, religion, sex or national

origin." 42 U.S.C. § 2000e-2(a)(1).  Section 1981 provides that "[a]ll persons within the jurisdiction

of the United States shall have the same right . . . to the full and equal benefit of all laws and

proceedings for the security of persons and property . . . ."  42 U.S.C.A. § 1981 (a).

Because Bell presents circumstantial, rather than direct, evidence of discrimination, this case

4

is governed by the analysis found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this test, the plaintiff has the initial burden of establishing a *prima facie* case of unlawful employment discrimination by a preponderance of the evidence.  *Id*. at 802; *Young v. Gen. Food Corp*., 840 F.2d 825, 828 (11th Cir. 1988).  To establish a *prima facie* case of discriminatory discharge under Title VII and § 1981, Bell must show that: (1) she belongs to a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside her classification more favorably. *Wilson v. B/E Aerospace*, 376 F.3d 1079, 1091 (11th Cir. 2004).  Capital Veneer concedes that the first three prongs of this test have been met: Bell is an African-American female over the age of 40; she was minimally qualified for the job; and she was laid off from her job and not recalled, effectively resulting in termination.  However, Capital Veneer denies that it treated similarly situated employees outside her classification more favorably.

In her complaint, Bell states that, while she and another African-American female over the age of 40 were laid off, "[n]either the black, under-forty male nor the Mexican female" were laid off. Compl. ¶ 10.  Bell further claims that she was replaced by "non-African-American, under 40 Mexican or Hispanic males and females." Compl. ¶ 13;  Pl.'s Resp. to Mot. for Summ. J. at 8.

Capital Veneer maintains that in July 2003, at the time plant number three was closed down, there were five employees assigned to that plant: Bell; Melinda Hendricks; Myrtle Brooks, a 63-year-old African-American female; Adam Lipscomb, a 63-year-old African-American male; and Liboria Camano, a 23-year-old Hispanic female.[2]  Capital Veneer claims that only Bell, Hendricks and

---

[2] There is some dispute over whether the fifth employee was Adam Lipscomb or an unidentified black or Hispanic male under the age of 40. In her signed declaration, Melinda Hendricks stated that the fifth worker was "a Mexican male, under 40." Hendricks Dec. at 2. Bell also stated in her signed declaration that Adam Lipscomb was

Brooks were permanently assigned to plant number three, and that Lipscomb and Camano worked in plant number three when additional help was needed there.  Capital Veneer argues that because Lipscomb and Camano "were returned to their regularly assigned positions when plant number three was shut down," Bell did not lose her position to these workers, nor was she replaced by them.  Mot. for Summ. J. at 8.

The Eleventh Circuit has held that the "plaintiff and the employee she identifies as a comparator must be similarly situated 'in all relevant respects.'  The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer."  *Wilson*, 376 F.3d at 1091(citations omitted).  Capital Veneer claims that Camano and the male employee, the only two employees at plant number three who were not permanently assigned to work in that plant, were re-assigned to their positions when plant number three closed down in July 2003, and Bell was not re-assigned because she had no other permanent position besides working at plant number three.  According to Capital Veneer, Bell was laid off due to lack of work and leadership in plant number three.  Because Lipscomb and Camano were originally assigned to other positions, they were returned to those positions and were not laid off.  Though she occasionally worked in the other two plants when plant number three was slow, Bell has not produced evidence to contradict her permanent assignment to plant number three.  *See* G. Bell Dec. at 3 ("I was worked mostly in plant 3 . . . .  At the time of my termination, I was working in plant 3.").  She has not produced evidence to show that Lipscomb and Camano were not originally

_____

not working in plant number three at the time she was laid off; rather, "a young Mexican or Hispanic male, under 40" was working in plant number three. G. Bell Dec. at 2. Bell's Complaint stated that a "black, under-forty male" was working in the plant at the time she was laid off. Compl. ¶ 10. The Court notes that the identity of the fifth worker in plant number three does not change the Court's ultimate analysis of the summary judgment motion.

assigned to different plants or assignments.  Having not shown that she was similarly situated to Camano and the other male employee, Bell has not produced evidence to show that race or sex were motivating factors when Capital Veneer decided to lay her off and retain Camano and the male employee.[3]  Because of this, Bell has failed to prove the fourth prong of the *prima facie* case for discriminatory discharge under Title VII and § 1981, that her employer treated similarly situated employees outside her classification more favorably.  Therefore, with regard to Bell's Title VII and § 1981 claims, the defendant's Motion for Summary Judgment is due to be granted.

B.      *Motion for Summary Judgment: ADEA*

Bell has also alleged one count of age discrimination under 29 U.S.C. § 623 *et seq*., the Age Discrimination in Employment Act ("ADEA").  The ADEA provides that it is illegal for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623 (a)(1).  A slightly different analysis is required to establish a *prima facie* case under the ADEA.  To prove a *prima facie* case of age discrimination in a case involving a layoff, Bell must show (1) that she was a member of the protected age group and was adversely affected by an employment decision; (2) that she was qualified for her current position or to assume another position at the time of discharge; and (3) that there exists "evidence by which a fact finder reasonably could conclude that the employer intended to discriminate on the basis of

---

[3] The Court notes that Bell submitted as evidence in support of her response to the defendant's motion for summary judgment the declaration of Myrtle Brooks, who had been a co-worker of the plaintiff. Brooks describes a comment made by Jason Adams, vice president of production for Capital Veneer works: "Sometime before he terminated me, Mr. Jason was angry, and he said something to the effect 'If I could run the mill myself, I woudl fire everyone of these niggers.'" Brooks Dec. at 3. Bell does not argue that the alleged comment amounts to direct evidence of discrimination; rather, she contends that it strengthens her *prima facie* case. The comment, if believed, constitutes circumstantial evidence of discrimination at best, and it does not change the Court's analysis of Bell's *prima facie* case.

age in reaching that decision." *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1208 (11th Cir. 1997).

Capital Veneer does not deny that Bell is a member of the protected age group and that she was adversely affected by an employment decision.  Further, Capital Veneer does not deny that Bell was qualified for the job that was eliminated; however, it does not concede that she was qualified for any other position with the company at the time she was laid off.  The Eleventh Circuit has held that, "[w]here a particular job position is entirely eliminated for nondiscriminatory reasons, for plaintiff to prevail against his employer he must show that he was qualified for another available job with that employer; qualification for his current position is not enough." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1082-83 (11th Cir. 1990) (citations omitted).  "Essentially, without a showing that there was an open position for which [the plaintiff] was qualified at the time of [her] discharge, [the plaintiff] cannot establish the second prong of her prima facie case." *Edwards v. Baptist Health*, 2005 WL 1331262 *4 (M.D. Ala. 2005).  Bell alleges that she "could have performed work in plant one," but she has not offered evidence to show that any additional jobs were available in plant one at the time plant three was shut down.  *See* G. Bell Dec. at 3.  Further, the ADEA

> 'does not mandate that employers establish an interdepartmental transfer program during the course of [a layoff] . . . or impose any added burden on employers to transfer or rehire laid-off workers in the protected age group as a matter of course.' Rather, the ADEA simply provides that a discharged employee 'who applies for a job for which she is qualified and which is available at the time of her termination must be considered for that job along with all other candidates, and cannot be denied the position based upon her age.'

*Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1344-45 (11th Cir. 2003) (citations omitted).  Bell has not provided evidence that she applied for a job for which she was qualified and which was available at the time of her termination. Nor, as noted above, did she ask to be rehired.

Even if Bell could meet the requirements of the second prong of this test, she cannot establish a *prima facie* case of age discrimination because she has not met the third prong of the test. Bell has not offered evidence that could convince a reasonable jury that Capital Veneer intentionally discriminated against her on the basis of her age. *See Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1329 (11th Cir. 1998) ("At issue is whether [the plaintiff] can point to sufficient evidence to allow a reasonable juror to find discriminatory intent."). Bell contends that the fact that Capital Veneer retained Camano and a male employee – both of whom were younger than Bell – when she was laid off is evidence of discrimination. As discussed above, Bell has not shown that the comparators were similarly situated. Bell was permanently assigned to plant number three; they were not. Bell offers no other evidence of discrimination based on age.

"[P]rovided that the proffered reason is one that might motivate a reasonable employer, an employee cannot succeed on summary judgment by simply quarreling with the wisdom of that reason." *Lewis v. Chattahoochee Valley Community College,* 136 F.Supp.2d 1232, 1242 (M.D. Ala. 2001) (citing *Chapman v. Al Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc)). While Bell may believe that her experience at Capital Veneer made her a better candidate than Camano and the male employee to be retained in July 2003, that belief alone is not enough to prove discrimination.

Bell has not provided sufficient evidence to demonstrate a disputed issue of material fact as to whether her termination was impermissibly based on age. Therefore, with regard to Bell's ADEA claim, the defendant's Motion for Summary Judgment is due to be granted.

C.    *Other Motions*

Bell's Response in Objection to Defendant's Motion for Summary Judgment (Doc. # 20) included within it a Motion to Strike. Bell moves to strike portions of Jason Adams' affidavit in

9

which he discusses her work performance; Bell also objects to any references to a collective bargaining agreement between Capital Veneer and its employees.  In addition, Bell moves to strike Adams' references to Bell's employment history with Capital Veneer in 1998, 2000 and 2001. Because the Court does not need to consider claims regarding Bell's work performance or the collective bargaining agreement, this portion of the Motion to Strike is due to be denied as moot. Regarding the references to Bell's work history, Bell herself described her employment history with Capital Veneer in her deposition testimony.  Bell Depo. at 27-33.  The Court finds no reason that any references to such history should be stricken.  This portion of the Motion to Strike is due to be denied as well.

Finally, after the Motion for Summary Judgment had been fully briefed, Bell filed a Request for Permission to Respond to Affidavits of Jason Adams and Leroy Shannon (Doc. # 24).  Bell argues, among other things, that these affidavits, which were filed at the same time as the defendant's Reply to Plaintiff's Response to the Motion for Summary Judgment, were untimely filed and contain evidence outside the scope of what was included in Capital Veneer's initial disclosures. The Court finds no need to consider the evidence included in these two affidavits, and therefore finds that Bell's request to respond to the affidavits is due to be denied as moot.

### V.  CONCLUSION

For the reasons set forth above, it is hereby ORDERED that:

1. The defendant's Motion for Summary Judgment (Doc. # 15) is GRANTED.

2. The plaintiff's Motion to Strike (Doc. # 20) is DENIED.

3. The defendant's Motion to Substitute Memorandum (Doc. # 23) is GRANTED.

4. The plaintiff's Request for Permission to Respond (Doc. # 24) is DENIED.

5.  The defendant's Motion for Leave of Absence (Doc. # 29) is DENIED as MOOT.

6.   The pretrial conference set for March 16, 2006 is CANCELLED.

7.  The clerk is DIRECTED to remove this case from the April 24, 2006 trial docket.

A final judgment will be entered in accordance with this memorandum opinion and order.

DONE this the 13th day of March, 2006.


       /s/   W.  Keith Watkins
UNITED STATES DISTRICT JUDGE